UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL CORDARO,

                Plaintiff,                **DECISION AND ORDER**

    v.
                                   6:22-CV-06027 EAW

DEPARTMENT OF DEFENSE, et al.

                Defendants.

_____

## INTRODUCTION

*Pro se* plaintiff Michael Cordaro ("Plaintiff") commenced the instant employment discrimination action on January 19, 2022, asserting claims arising from his 2018 removal from a position as an auditor for the Defense Contract Auditing Agency ("DCAA") in the Department of Defense ("DOD"). (Dkt. 1). He names the DOD, Jessie Essom ("Defendant Essom"), Agathie Edkin ("Defendant Edkin"), Michele Sholar ("Defendant Sholar"), and Debra Neville ("Defendant Neville") (collectively "Defendants") as defendants. Currently pending before the Court is Defendants' motion to substitute the United States as a party and to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. (Dkt. 8). Plaintiff has also filed a motion for service by the United States Marshals Service ("USMS") (Dkt. 6), and motion for sanctions (Dkt. 10).

For the reasons discussed below, Defendants' motion is granted in part and denied in part, and Plaintiff's motions are denied.

## BACKGROUND

### I.   Factual Background

The following facts are taken from Plaintiff's complaint. (Dkt. 1). As required on a motion to dismiss, the Court treats Plaintiff's factual allegations as true and draws all inferences in Plaintiff's favor.

Plaintiff alleges that he was discriminated against by his employer, the DOD, based upon his gender and physical and psychological conditions. (*Id.* at 1). He also contends that he was subjected to retaliation, harassment, and a hostile work environment in the course of his employment. (*Id.*).

Specifically, shortly after Plaintiff joined a team supervised by Defendant Essom in October 2017, Defendant Essom criticized Plaintiff in an Interim Performance Appraisal for his mere disagreement with an approach employed in an audit by Defendant Edkin. (*Id.* at 6). Defendant Essom did not provide Plaintiff with appropriate training and afforded more managerial guidance and attention to Plaintiff's female coworkers. (*Id.*).

In November of 2017, Defendant Sholar, Plaintiff's branch manager, refused to transfer Plaintiff out of the hostile work environment created by Defendant Essom. (*Id.* at 3). In addition, Defendant Sholar shared Plaintiff's complaints with Defendant Essom. (*Id.* at 9). But in testimony during the March 4, 2019 Merit System Protection Board ("MSPB") hearing arising from Plaintiff's removal, both Defendant Sholar and Defendant Essom falsely denied being aware of Plaintiff's complaints or request to transfer. (*Id.*).

On April 3, 2018, Plaintiff was placed on a Performance Improvement Plan ("PIP") that was designed to prevent him from succeeding. (*Id.* at 7). Plaintiff was given an

unreasonable workload without adequate training and was criticized for failing to attend a training that was not even offered to him. (*Id.*). In addition, Plaintiff was never provided with any proof to demonstrate that his performance was unacceptable. (*Id.*). Moreover, on the day the PIP was implemented, Plaintiff was scheduled to be on leave for a family matter, demonstrating that Defendant Essom acted vindictively towards Plaintiff and had no intention of assisting him in correcting performance concerns. (*Id.*).

On July 9, 2018, Defendant Edkin and Defendant Essom accused Plaintiff of being threatening during a performance meeting. (*Id.* at 4). Defendant Edkin put in writing that Plaintiff made "fists" with his hands, despite there being no indication that his hand movements were directed at any other individual. (*Id.*). Instead, Plaintiff's hand movements are directly attributable to his diagnosed condition of Asperger's Syndrome. (*Id.*). Defendant Edkin should not have been included in the meeting and was invited solely to harass and embarrass Plaintiff. (*Id.*).

On July 19, 2018, Defendant Essom put in writing to DOD security that she considered Plaintiff's disability to constitute a threat. (*Id.* at 9). Defendant Essom's written communication confirmed that she discriminated against Plaintiff and accused him of committing an act of harassment notwithstanding that he was not involved in the incident. (*Id.* at 5, 9).

On September 3, 2018, Defendant Neville recommended that Plaintiff be removed from federal service. (*Id.* at 8). Plaintiff was not provided with details of his due process rights to grieve his removal as required. (*Id.*). At the MSPB Hearing, Defendant Neville admitted that a similarly situated female auditor was given an opportunity to take a

different position within the agency rather than being removed.  (*Id.*).  Plaintiff contends that there were other similarly situated employees that were either female or who did not have a disability that, unlike Plaintiff, were not removed.  (*Id.*).

In his complaint, Plaintiff asserts claims for disability discrimination, gender discrimination, hostile work environment, and retaliation.  (*See generally id.*).  He seeks compensatory damages for pain and suffering, lost wages, and lost time towards retirement benefits.  (*Id.*).

## II.   <u>**Procedural Background**</u>

Plaintiff commenced the instant action on January 19, 2022.  (Dkt. 1).  On October 31, 2022, Plaintiff filed his motion for service by the USMS.  (Dkt. 6).  On November 21, 2022, Defendants filed their motion to substitute and to dismiss for failure to state a claim. (Dkt. 8).  On November 28, 2022, Plaintiff filed his motion for sanctions.  (Dkt. 10).  On December 12, 2022, Plaintiff filed a supplemental response in opposition to Defendants' motion to substitute and dismiss.  (Dkt. 16).  On January 23, 2023, Defendants filed a reply. (Dkt. 19).

This is not the first time that Plaintiff has pursued litigation in this Court concerning his removal.  Plaintiff filed a prior action against the DOD in the Federal Circuit, in which he appealed the MSPB's decision that affirmed the DOD determination to remove Plaintiff from employment and rejected Plaintiff's claims of gender discrimination.  *See Cordaro v. Dep't of Defense*, Case No. 6:19-cv-06601-EAW-MJP, Dkt. 13 (W.D.N.Y. Aug. 16, 2019) ("*Cordaro I*").  The Federal Circuit deemed it a "mixed case" in light of Plaintiff's inclusion of a challenge to the MSPB's decision based on an affirmative claim of

discrimination, which deprived the Federal Circuit of jurisdiction and required transfer to a federal district court.  (*Id.*).  *Cordaro I* was resolved by this Court on September 29, 2021, in a Decision and Order granting summary judgment to the DOD.  (*Cordaro I*, Dkt. 70 at 22 ("In sum, on the record before the Court, a reasonable jury could find at most that Plaintiff was terminated because Essom and Sholar had personal animus towards him and were unfair in their assessments of his work.  That is insufficient as a matter of law to support the imposition of liability under Title VII, and so Defendant is entitled to summary judgment on Plaintiff's discrimination claim.")).  Plaintiff's attempt to appeal to the Second Circuit Court of Appeals was rejected for failure to pay the filing fee.  (*Id.* at Dkt. 80).[1] Plaintiff acknowledges that the instant action arises from many of the same facts involved in *Cordaro I* but contends that the prior action was limited to a claim of gender discrimination and his current claims of disability discrimination were not asserted in the prior matter.  (Dkt. 1 at 2-3).

In addition, Plaintiff filed a formal complaint[2] with the DCAA Equal Employment Opportunity ("EEO") Office alleging retaliation and discrimination with respect to his

---

[1]    Plaintiff has also commenced another lawsuit in this Court that is currently pending. *See Cordaro v. Dep't of Defense*, Case No. 6:22-cv-06499-EAW, Dkt. 1 (W.D.N.Y. Nov. 10, 2022).

[2]    The Court has considered the EEO documents submitted by Defendants because they constitute "integral documents" to Plaintiff's claims.  *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230-31 (2d Cir. 2016) (holding that courts may consider on a motion to dismiss "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" and any other documents "integral" to the complaint).

gender on November 18, 2018.[3]  (Dkt. 8-2 at 7).  On November 23, 2019, Plaintiff filed an

amended charge of discrimination but again did not include discrimination based on

disability.  (*Id.* at 30-31).  On March 18, 2020, Plaintiff attempted to update his charge of

discrimination to add claims with respect to his disability, arising from information

contained in the July 19, 2018 email sent by Defendant Essom.  (*Id.* at 34-35).  The request

to include these claims was denied.  (*Id.* at 38).  Specifically, the request was denied on the

grounds that all of the information supporting the claim was available to Plaintiff when he

filed his original complaint and his claim for disability discrimination was unrelated to

Plaintiff's pending claims based on retaliation and sex.  (*Id.*).

## DISCUSSION

## I.    Legal Standard for Motion to Dismiss

"In considering a motion to dismiss for failure to state a claim pursuant to Rule

12(b)(6), a district court may consider the facts alleged in the [pleading], documents

attached to the [pleading] as exhibits, and documents incorporated by reference in the

[pleading]."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  A court

---

[3]      "A federal employee challenging removal as discriminatory or retaliatory may do
so either in an MSPB proceeding or in an EEOC proceeding.  However, federal regulations
require that the employee must elect which statutory proceeding to pursue—he cannot
pursue both."  *Ross v. Dep't of the Army*, No. 122CV670AMDLB, 2023 WL 5494644, at
*3 (E.D.N.Y. Aug. 24, 2023).  Here, Plaintiff's EEO complaint presented two claims:  one
alleging harassment, hostile work environment, and retaliation because of his gender
during his employment, and a second alleging discrimination on the basis of gender and
retaliation resulting in his notice of removal.  Because Plaintiff pursued an appeal with the
MSPB regarding his removal, his second claim was dismissed by the EEO Office and only
his claims arising during his employment including: his request to transfer, lack of training,
unacceptable performance ratings, placement on a PIP, and the failure to investigate a
sticky substance on his desk, were accepted.  (Dkt. 8-2 at 12-17).

should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the [pleading]'s '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). While the Court is "obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must satisfy the plausibility standard set forth in *Iqbal* and *Twombly*, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

## II.  Motion to Substitute

The Court turns first to Defendants' motion to substitute. The "United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its

consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quotation omitted). "In a federal employee's discrimination suit under Title VII, 'the head of the department, agency, or unit, as appropriate, shall be the defendant,'" and claims against the federal agency itself are subject to dismissal. *Noveda v. U.S.P.S.*, No. 23-CV-6041 (LTS), 2023 WL 5152694, at *1 (S.D.N.Y. July 18, 2023) (quoting *Marshall v. Nat'l Assoc. of Letter Carriers Br. 36*, No. 00-CV-3167 (LTS), 2003 WL 223563, at *7 (S.D.N.Y. Feb. 3, 2003)); *see also McCutcheon v. United States Dep't of Interior, Nat'l Parks Serv.*, No. 20-CV-10616 (VF), 2023 WL 2456558, at *6 (S.D.N.Y. Mar. 10, 2023) ("A plaintiff 'cannot sue an agency' for employment discrimination under 'the Rehabilitation Act and the ADEA' and must instead 'name the agency head as the defendant.'" (quoting *McDonald v. United States Postal Serv.*, No. 08-CV-4936 (RJD) (LB), 2009 WL 10706724, at *1 n.2 (E.D.N.Y. Oct. 14, 2009)).

Nor are individual employees or supervisors proper defendants. *See Correa v. Carnahan*, No. 22-CV-10213 (ALC), 2022 WL 17805623, at *1 (S.D.N.Y. Dec. 19, 2022) ("Employment discrimination actions brought by government employees under Title VII or the ADEA must be brought against the head of the agency in which the allegedly discriminatory acts occurred. . . . However, other individual employees are not proper defendants under Title VII or the ADEA." (citations omitted)); *see also Pratt v. Brennan*, No. 18-CV-4799 (KMK), 2020 WL 364195, at *7 (S.D.N.Y. Jan. 22, 2020) (holding that only proper defendant in employment discrimination claim brought by a federal employee is head of agency being sued and dismissing individual defendant from case); *Ezeh v. VA*

*Med. Ctr., Canandaigua, NY*, No. 13-CV-06563 EAW, 2014 WL 4897905, at *7 (W.D.N.Y. Sept. 29, 2014) ("Mr. Burkhart is not the head of the department, agency, or unit that employed Plaintiff and is not an appropriate Title VII defendant.  Additionally, Title VII applies only to discriminatory practices by an employer and Plaintiff does not allege that Mr. Burkhart has ever been Plaintiff's employer."); *Garibaldi v. Anixter, Inc*., 407 F. Supp. 2d 449, 451 (W.D.N.Y. 2006) ("[T]here is no individual liability under *any* of the federal anti-discrimination statutes, including Title VII, the ADA, and the ADEA.").

Here, Lloyd J. Austin III is the current Secretary of the Department of Defense. Based on the foregoing legal authority, Secretary Austin is the proper defendant. Accordingly, Defendants' motion to substitute is granted and Secretary Austin is hereby substituted in the place of the named defendants.

### III.   <u>Motion to Dismiss</u>

The Court now turns to the motion by Secretary Austin ("Defendant") to dismiss Plaintiff's claims.  Defendant argues that Plaintiff's gender discrimination and removal-related claims are barred by the doctrine of res judicata.  Additionally, Defendant contends that Plaintiff's disability discrimination claims should be dismissed for a failure to exhaust administrative remedies.  Finally, Defendant argues that Plaintiff's claim for retaliation fails to state a claim upon which relief can be granted.  The Court will address each argument below.

A.  **Principles of Res Judicata and Collateral Estoppel Bar Plaintiff's Gender Discrimination and Removal-Related Claims**

As an initial matter, consideration of res judicata and collateral estoppel[4] are appropriate on a Rule 12(b)(6) motion.  *See Vdare v. James*, No. 122CV1337 (FJS/CFH), 2023 WL 5959553, at *7 (N.D.N.Y. Sept. 13, 2023) ("A court may consider a *res judicata* defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached to or incorporated therein, and materials appropriate for judicial notice." (quoting *TechnoMarine S.A. v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014))); *Nicholson v. Bank of New York Mellon Tr.*, No. 22CIV3177(PGG)(KHP), 2023 WL 5526715, at *6 (S.D.N.Y. Aug. 28, 2023) ("It is well settled that a court may dismiss a claim on *res judicata* or collateral estoppel grounds on a Rule 12(b)(6) motion." (quoting *Sassower v. Abrams*, 833 F. Supp. 253, 264 n.17 (S.D.N.Y. 1993))); *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010) (2d Cir. 2011) ("A court may dismiss a claim on res judicata or collateral estoppel grounds on a motion to dismiss, a motion for judgment on the pleadings, or a motion for summary judgment."), *aff'd*, 446 F. App'x 360 (2d Cir. 2011).

"[T]he doctrine of res judicata, or claim preclusion, provides that [a] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action."  *Duane Reade, Inc. v. St. Paul Fire and Marine Ins.*

---

[4]  Although Defendant did not expressly assert the applicability of the related doctrine of collateral estoppel, to the extent that it is not subsumed by his assertion of res judicata, the Court may raise the issue of collateral estoppel *sua sponte* when germane.  *Stinnett v. Delta Air Lines, Inc.*, 803 F. App'x 505, 508 (2d Cir. 2020) ("And under federal law, a court may raise the issue of collateral estoppel *sua sponte*.").

*Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (alterations in original) (quotation omitted). "It is well settled that a dismissal with prejudice 'constitutes a final judgment with the preclusive effect of res judicata not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit.'" *Robb v. Brewster*, No. 22-CV-4301 (NSR), 2023 WL 3436105, at *2 (S.D.N.Y. May 12, 2023) (quoting *Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 815 (2d Cir. 2022)). Relatedly, "[t]he doctrine of collateral estoppel provides that 'when an issue of ultimate fact has once been determined by a valid and final judgment, the issue cannot again be litigated between the same parties in any future lawsuit.'" *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 424 (S.D.N.Y. 2012) (quoting *Swiatkowski*, 745 F. Supp. 2d at 168); *see also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288 (2d Cir. 2002) ("Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding."). "Both doctrines [res judicata and collateral estoppel] draw from the same underlying logic—that permitting the open-ended relitigation of claims and issues in serial lawsuits risks unfairness to the parties, inconsistent judgments, and wasteful expenditure of judicial resources." *Weir v. Montefiore Med. Ctr.*, No. 23 CIV. 4468 (KPF), 2023 WL 5747642, at *2 (S.D.N.Y. Sept. 6, 2023).

Because *Cordaro I* presented a federal question, federal common law principles of preclusion apply. *Id.* at *3. "Under federal common law, four requirements are necessary for res judicata to apply. The earlier decision must have been '[i] a final judgment on the merits, [ii] by a court of competent jurisdiction, [iii] in a case involving the same parties or

their privies, and [iv] involving the same cause of action.'" *Id.* (quoting *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221-22 (2d Cir. 2012)); *see also EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (noting that res judicata "bars 'later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.'" (quoting *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985)).

Here, the first three elements are easily met. It is undisputed that a final judgment was entered on September 27, 2021 in *Cordaro I*, and that this Court is a court of competent jurisdiction. The litigants in the two matters are essentially the same. That Plaintiff attempted to name the individual defendants in this action in addition to his federal-agency employer is of no moment since claims against those individuals are not cognizable for the reasons set forth above. And even if not subject to dismissal, the claims of the individual defendants are in privity with their employer, the DOD. *Davis v. Metro N. Commuter R.R.*, No. 21 Civ. 387 (ER), 2022 WL 2223018, at *5 (S.D.N.Y. June 21, 2022) ("[F]or the purpose of res judicata, the employee-employer relationship is sufficient to establish privity." (citing *Amadsau v. Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450 (LAK) (AJP), 2005 WL 121746, at *8 (S.D.N.Y. Jan. 21, 2005)))).

As to the last element, the gender discrimination and removal claims asserted in this litigation are the same as those that were brought, or could have been brought, in *Cordaro I*. "To determine if a claim could have been raised in an earlier action, courts look to whether the present claim arises out of the same transaction or series of transactions

asserted in the earlier action . . . or, in other words, whether facts essential to the second suit were present in the first suit." *Tagger v. Strauss Grp. Israel,* No. 23-CV-6767 (CS), 2023 WL 5237966, at *3 (S.D.N.Y. Aug. 15, 2023) (citations omitted); *see also Fried v. LVI Servs., Inc.*, 557 F. App'x 61, 64 (2d Cir. 2014) ("This inquiry focuses on whether the two claims arise from the same 'nucleus of operative fact'—that is, 'whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations.'" (quoting *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000))).

Here, the Court's Decision and Order awarding summary judgment in *Cordaro I* discussed the same essential facts as those alleged in Plaintiff's complaint in this action and all of the claims in both cases arise during the exact same time period.  Plaintiff's gender discrimination claims relating to his removal from employment, as well as his challenge to the determination of the MSPB were all considered and ultimately rejected by the Court in granting judgment against Plaintiff in *Cordaro I* as a matter of law.  (*Cordaro I* (Dkt. 70)).  That Plaintiff now wants to raise new challenges to the removal proceedings or attempt to relitigate additional claims of gender discrimination arising from the same exact facts occurring during his employment with the DOD does not save those claims, as any such claims arise from the same nucleus of facts as those alleged in *Cordaro I*.[5]  *See*

_____

[5]     In his opposition to the motion to dismiss, Plaintiff also alludes to other claims he purports to be asserting but which are not contained in his complaint, including certain due process violations, retaliation for use of medical leave, defamation, and libel.  Plaintiff has not filed a properly supported motion to amend his complaint to assert those claims and, as a result, the Court need not resolve at this time whether any such claims would be similarly barred by res judicata or collateral estoppel.

*Marcotte v. City of Rochester*, 677 F. App'x 723, 725 (2d Cir. 2017) (Court barred second action on res judicata grounds holding that "to the extent that Plaintiff now seeks to pursue a retaliation claim rather than a discrimination claim, newly-discovered evidence of disparate treatment would no[t] generate her new theory in any event. The assertion of a new legal theory does not alter this result."); *Pinkard v. NYC Dep't of Educ.,* No. 23CV1640(AMD)(JRC), 2023 WL 2868453, at *5 (E.D.N.Y. Apr. 10, 2023) (dismissing subsequent employment-related claims against same employer where "[a]side from the pension deficit claim, all of the claims the plaintiff raises here are identical to those the Southern District already dismissed or, at most, present 'different legal theories' on the 'same' facts"); *Ranasinghe v. Kennell,* No. 16-CV-2170 (JMF), 2017 WL 384357, at *4 (S.D.N.Y. Jan. 25, 2017) ("The fact that Ranasinghe has repackaged his claims slightly and presented them in the guise of new legal theories is immaterial, as *res judicata* precludes not only those claims that were raised in the prior action, but also those involving the same transaction or connected series of transactions that 'could have been raised in that action.'" (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981))), *aff'd*, 718 F. App'x 82 (2d Cir. 2018).

Likewise, "[u]nder federal law, collateral estoppel applies when '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Figueroa v. Garland*, No. 1:21-CV-7849-GHW, 2022 WL 17539114, at *7 (S.D.N.Y. Dec. 6, 2022) (quoting *Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2002)); *see*

*also Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003) ("[C]ollateral estoppel, or issue preclusion, bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding, regardless of whether the two suits are based on the same cause of action."); *Weir* 2023 WL 5747642, at *6 ("Put simply, where a party has an opportunity to fully and fairly litigate an issue, does so, and loses, that party may be estopped from asserting that issue in a subsequent proceeding.").   Here, in the prior proceeding, at the summary judgment stage, the Court expressly found that at most, a reasonable jury could conclude that Plaintiff was terminated because his supervisors had personal animus towards him or did not assess his work fairly, but that his allegations were insufficient to establish or support a claim for gender discrimination.   That finding is entitled to preclusive effect.   *See Lee v. Saul,* No. 19CIV6553 (PGG)(SN), 2022 WL 873511, at *7 (S.D.N.Y. Mar. 23, 2022) ("This Court also notes that—to the extent that Plaintiff's claims arise out of conduct that took place between April 2011 and April 2014 —his claims are barred by *res judicata* and collateral estoppel" because his prior action "raised discrimination claims against the SSA based on conduct that took place within that time period"), *appeal dismissed* (2d Cir. T 22-1154, 22-1246) (Jan. 11, 2023); *Jones-Khan v. Westbury Bd. of Educ.*, No. 21CV3908(JMA)(JMW), 2022 WL 280646, at *7 (E.D.N.Y. Jan. 31, 2022) ("Simply put, Plaintiff is not entitled to relitigate issues concerning her employment and termination in a second lawsuit.   Since Plaintiff has already fully litigated the discrimination, wrongful termination, and retaliation issues—and lost—, she may not raise them again simply by narrowing her theory and adding individual defendants.

Accordingly, collateral estoppel also precludes re-litigation of these issues, even against newly-added defendants.").

In sum, because the facts supporting Plaintiff's claims for gender discrimination and challenges to the MSPB proceedings were known to Plaintiff at the time he filed *Cordaro I* and the Court did or could have resolved those matters in that proceeding, res judicata and/or collateral estoppel operate as a bar to those claims here.

### B.   Failure to Exhaust Disability Discrimination Claims

With respect to Plaintiff's disability discrimination claims, they are barred because Plaintiff has not demonstrated that he timely exhausted his administrative remedies. "In the Second Circuit, Section 501 of the Rehabilitation Act provides the exclusive route by which federal employees may raise claims of employment discrimination on the basis of disability." *Hodges v. Att'y Gen. of U.S.*, 976 F. Supp. 2d 480, 490 (S.D.N.Y. 2013) (citations omitted). "[T]he Rehabilitation Act requires the exhaustion of administrative remedies . . . in cases brought by federal employees[.]" *Wein v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 11141 (PAE), 2020 WL 4903997, at *8 n.8 (S.D.N.Y. Aug. 19, 2020); *see also Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 169 n.11 (2d Cir. 2013) ("Courts have construed [§794a] of the Rehabilitation Act . . . as imposing [an exhaustion requirement] as to claims against a federal employer."). "Federal Regulations require that incidents of alleged discrimination be reported to the EEOC within 45 days of their occurrence." *McCutcheon*, 2023 WL 2456558, at *7.

Although Plaintiff filed a formal complaint alleging retaliation and gender discrimination on November 18, 2018, his formal complaint did not raise disability as a

reason upon which Plaintiff believed he was discriminated, nor did he include such claims in a later amendment of his charge in November 2019.  (Dkt. 8-2 at 7, 30-31).  His attempt to include claims relating to his disability in March of 2020 was denied on the grounds that all of the information supporting the proposed amendments was available to Plaintiff when he filed his original complaint and the claims were untimely.  (*Id.* at 38).  Accordingly, Plaintiff has not properly exhausted his administrative remedies with respect to his disability discrimination-related claims.  *See Lee*, 2022 WL 873511, at *5 ("Unless the employee has exhausted his administrative remedies, his employment discrimination claims under the Rehabilitation Act are barred.").

While there are some equitable defenses available to save an untimely claim, Plaintiff has not sufficiently invoked these defenses or established their applicability in this case.  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Kirkwood v. Buffalo & Erie Cnty. Naval & Mil. Park*, No. 22-CV-703-LJV, 2023 WL 4959881, at *6 (W.D.N.Y. Aug. 3, 2023) (quoting *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011)); *see also Rojas-Reyes v. INS*, 235 F.3d 115, 126 (2d Cir. 2000) ("Equitable estoppel is not available against the government except in the most serious circumstances, . . . and is applied with the utmost caution and restraint." (internal quotations and citations omitted)); *Ferguson v. Park Slope Food Co-Op*, No. 21CV347(WFK)(TAM), 2023 WL 2462726, at *5 (E.D.N.Y. Mar. 10, 2023) ("However, these [equitable] defenses should be applied 'sparingly.'" (quoting *Merisier v. Kings Cnty. Hosp.*, 15-CV-2739 (RRM)

(RML), 2018 WL 1474176, at *3 (E.D.N.Y. Mar. 23, 2018)).   No extraordinary circumstances are demonstrated.

While Plaintiff argues that it was his receipt of Defendant Essom's July 19, 2018 email that put him on notice of his potential disability claims, that document was contained in the Report of Investigation prepared by the EEO officer and provided to the parties on June 10, 2019, and does not independently suffice to support a claim for disability discrimination.  (Dkt. 8-2 at 19, 24-26).  Because Plaintiff did not attempt to add a disability discrimination claim until March 20, 2020, no basis for equitable tolling is demonstrated or otherwise apparent.  *See Walsh v. DeJoy*, No. 14CIV7239 (GBD)(KNF), 2021 WL 4355366, at *4 (S.D.N.Y. Sept. 24, 2021) ("Plaintiff does not provide this Court with sufficient evidence that would support the conclusion that he acted with 'reasonable diligence,' but encountered 'rare,' 'exceptional,' or 'extraordinary' circumstances that would entitle him to equitable tolling." (quoting *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003))).

## C.   Retaliation

Finally, Defendant argues that Plaintiff's claim for retaliation fails to state a claim upon which relief may be granted.  On this point, the Court disagrees.

The elements required for a retaliation claim are as follows: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (alterations in original)

(quoting *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)).   "A plaintiff engages in protected activity when she oppose[s] discrimination" and "must only allege that [s]he possessed a good faith, reasonable belief that the employer unlawfully discriminated." *McKenzie v. Big Apple Training Inc.*, No. 1:22-CV-9554-GHW, 2023 WL 4866041, at *8 (S.D.N.Y. July 31, 2023) (internal citations and quotations omitted)); *see also Stanley v. City Univ. of New York*, No. 18 CIV. 4844 (PAE), 2023 WL 2714181, at *14 (S.D.N.Y. Mar. 30, 2023) ("[A] protected activity is any 'action taken to protest or oppose statutorily prohibited discrimination.'" (quoting *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019))).

Defendant contends that Plaintiff's complaint does not allege that he engaged in protected activity and instead only alleges routine workplace complaints.  But protected activity is not limited to the filing of a lawsuit and "may consist of informal actions such as 'making complaints to management.'"  *Hatch v. Brennan*, 792 F. App'x 875, 879 (2d Cir. 2019) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 317 (2d Cir. 2015)); *see also Brown v. Fat Dough Incorp.*, No. 522CV0761BKSML, 2023 WL 3322959, at *8 (N.D.N.Y. Feb. 27, 2023) ("Internal complaints are sufficient to satisfy the first prong as protected activity." (citing *McKenna v. Santander Inv. Sec., Inc.*, 21-CV-0941, 2022 WL 2986588, at *10 (S.D.N.Y. July 28, 2022) ("Protected activity need not consist of a formal complaint of discrimination; an 'internal complaint to company management' can constitute a protected activity under Title VII."))), *report and recommendation adopted*, 2023 WL 2770230 (N.D.N.Y. Apr. 4, 2023); *Little v. Nat'l Broad. Co.*, 210 F. Supp. 2d 330, 384 (S.D.N.Y. 2002) ("As for the first element, 'protected activity' often takes the

form of filing a lawsuit or formal complaint with an agency. . . . However, it may also take the form of less formal protests, such as making complaints to management, writing critical letters to customers, or expressing support of co-workers who have filed charges." (internal citations and quotations omitted)).

Here, while not artfully plead, the allegations in Plaintiff's complaint alleging retaliation include his contentions that: Defendant Essom retaliated against him by giving him a lower performance appraisal in response to his disagreement with an approach used by Defendant Ekin in an audit (Dkt. 1 at 6); Defendant Sholar retaliated against Plaintiff after he requested to be transferred to a different supervisor as a result of the hostile work environment he endured under Defendant Essom and Defendant Sholar then shared Plaintiff's complaints with Defendant Essom (*id.* at 3, 9); Defendant Essom retaliated against Plaintiff by falsely putting in writing to agency security that Plaintiff had engaged in an act of harassment against her (*id.* at 5); and Defendant Neville recommended Plaintiff for removal following his provision to her of a grievance describing the circumstances leading to his removal (*id.* at 8).

While Defendant is correct that general complaints about work cannot support a finding of protected activity, *see, e.g. Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275, 287 (S.D.N.Y. 2006) (rejecting claim of retaliation arising from complaints about work or adverse actions because plaintiff had not alleged "that she ever complained to her supervisors that she was the victim of discrimination"), at this stage of the proceedings and taking Plaintiff's allegations as true, the Court concludes that Plaintiff has plausibly alleged that he was retaliated against for his complaints to a supervisor about a hostile work

environment and grievance he provided prior to his removal, which he believed amounted to discrimination, *Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 124 (S.D.N.Y. 2020) ("An employee engages in a protected activity when she complains of an employment practice that she reasonably believes violates the law." (quoting *Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 448 (S.D.N.Y. 2011))).  These allegations suffice to support a claim that Plaintiff engaged in protected activity of which Defendant was aware.  Defendant's motion to dismiss this claim is therefore denied.

In sum, the Court concludes that Plaintiff's gender discrimination and removal challenges arise from the same facts as the prior action and either were or could have been raised in *Cordaro I.*  As a result, those claims are subject to dismissal due to principles of res judicata or collateral estoppel.  In addition, Plaintiff's disability discrimination claims are subject to dismissal for a failure to establish that administrative remedies have been exhausted.  Finally, Plaintiff has stated a plausible retaliation claim and Defendant's motion to dismiss this claim is denied.

## IV.   Plaintiff's Motions

Finally, Plaintiff moves for service of his complaint by the United States Marshals Service on the individual defendants, relief that is mooted by the instant decision.  In addition, while Plaintiff's second motion is characterized as a motion for sanctions, his submission does not appear to seek affirmative relief against Defendants but rather, operates as his opposition to Defendant's motion to dismiss.  The Court has considered Plaintiff's arguments.  To the extent that Plaintiff may have intended his sanctions motion to request affirmative relief from the Court in the form of sanctions, it is denied.

## **CONCLUSION**

For the foregoing reasons, the Court grants in part and denies in part Defendants'

motion to substitute and to dismiss (Dkt. 8) and denies Plaintiff's motions for service (Dkt.

6) and for sanctions (Dkt. 10).  The Clerk of Court is instructed to substitute Secretary

Austin as Defendant.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  September 26, 2023
        Rochester, New York